# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-20293

United States Court of Appeals
Fifth Circuit

**FILED**

July 19, 2017

Lyle W. Cayce
Clerk

JOY PIPE, USA, L.P.,

     Plaintiff - Appellant Cross-Appellee

v.

ISMT LIMITED,

     Defendant - Appellee Cross-Appellant

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-2153

Before STEWART, Chief Judge, and WIENER and PRADO, Circuit Judges.

PER CURIAM:[*]

The dispute in this case stems from delivery of nonconforming steel bought by Plaintiff-Appellant Joy Pipe USA, L.P. ("Joy Pipe"), manufactured in India by Defendant-Appellee ISMT Limited ("ISMT"), and brokered in the United States by Fremak Industries ("Fremak"). The steel was marked as being of a higher grade than it actually was, and Joy Pipe, not observing any error, sent the steel to be transformed into couplings that were in turn sold to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20293

others in Joy Pipe's supply chain. Eventually, these steel couplings were placed deep inside two producing wells. These wells failed due to malfunction caused by the couplings, leading Joy Pipe to incur substantial costs in mitigation. Joy Pipe filed suit against ISMT, and a jury found in favor of Joy Pipe on claims for breach of the implied warranties of merchantability and fitness for a particular purpose. Nevertheless, the district court declined to adjust the award amount to include prejudgment interest, post-judgment interest, or taxable costs. Joy Pipe appeals on these grounds, and ISMT cross-appeals, raising other issues. We AFFIRM in part and REMAND in part.

## I. Background

The parties largely agree on the sequence of events culminating in this appeal. Plaintiff-Appellant Joy Pipe is a Texas limited liability company specializing in the business of selling quality steel couplings for use in oilfield drilling operations.[1] It purchases the steel for these couplings and ships it to its fabricator, Texas Couplings, L.P., for machining. Defendant-Appellee ISMT is a company registered in India that manufactures tubular steel stock used in fabricating steel couplings. Defendant Fremak is a New York corporation that distributes steel stock to fabricators. On July 29, 2010, Joy Pipe contracted with Fremak to purchase grade P-110 steel coupling stock manufactured by ISMT. The steel was shipped directly to Texas Couplings, machined into couplings, and sold to customers of Joy Pipe. Joy Pipe's customers in turn sold the couplings to other companies in a supply chain that ended with two well owners, Vermilion Resources and NuVista Energy.

Joy Pipe was notified of a well failure at the Vermilion well in August 2012, and was notified of another failure at the NuVista Well in March 2013.

---

[1] Couplings are short lengths of pipe or tube with one socket at either end. They allow two pipes or tubes to be tightly joined together.

2

No. 16-20293

After learning of the Vermilion well failure, Joy Pipe, through Texas Couplings, investigated the couplings they had supplied to two of Joy Pipe's customers—Welded Tube and Laguna Tubular. In particular, the entities relied on the conclusions of third-party investigator Acuren Group, Inc. ("Acuren"), which identified the cause of the failure as a defective coupling manufactured from ISMT stock that was represented to be grade P-110, but which in fact displayed a hardness and microstructure typical of a much lower grade. The failure at the NuVista well was also alleged to have resulted from a failed coupling, prompting Joy Pipe to engage in further mitigation efforts at its own expense. In particular, Joy Pipe paid $520,058 to Texas Couplings for expenses incurred in locating non-conforming steel, and allowed Welded Tube—which incurred losses in repairs, investigation, and removal—to withhold $1,779,514.38 on amounts otherwise owed to Joy Pipe.

Joy Pipe filed suit in federal district court against Fremak and ISMT, alleging breach of contract, breach of implied and express warranties, strict liability, negligence, and negligent misrepresentation. It sought damages for mitigation costs incurred by Joy Pipe, the amount Welded Tube withheld from Joy Pipe, the value of the defective steel, loss of business opportunity and lost profits, attorneys' fees, costs, prejudgment interest, and post-judgment interest. All parties agreed on the applicability of Texas law.

On December 8, 2014, the district court dismissed Joy Pipe's claims for strict liability, negligence, and negligent misrepresentation, leaving the breach of warranty claims to proceed. The case proceeded to trial in late October and early November 2015. After trial, the jury returned a verdict finding that ISMT had breached the implied warranty of merchantability and implied warranty of fitness for a particular purpose and was liable for damages totaling $2,299,572.38. Joy Pipe filed a motion to enter judgment and included a proposed final judgment providing for prejudgment interest as well as court

3

No. 16-20293

costs and post-judgment interest, to which ISMT responded. The district court then entered two orders, one summarily denying several motions, and the other entering final judgment pursuant to the jury verdict, without any mention of interest or costs. After denial of its motion to amend the judgment—along with ISMT's motion for judgment as a matter of law or for a new trial—Joy Pipe filed this appeal. ISMT then filed a cross-appeal.

## II. Discussion

### A. Prejudgment Interest

This court reviews a district court's ruling on prejudgment interest for abuse of discretion. *Reyes-Mata v. IBP, Inc.*, 299 F.3d 504, 507 (5th Cir. 2002) (per curiam).

### 1. Legal Standard

"Prejudgment interest is 'compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment.'" *Johnson & Higgins of Tex., Inc., v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (quoting *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex. 1985)). "The Texas Supreme Court has recognized two separate bases for the award of prejudgment interest: (1) an enabling statute; and (2) general principles of equity." *Int'l Turbine Servs. v. VASP Brazilian Airlines*, 278 F.3d 494, 499 (5th Cir. 2002). Statutory prejudgment interest is available only with respect to judgments in wrongful death, personal injury, property damage, and condemnation cases. *Id.* On the other hand, equitable prejudgment interest, which focuses on the need to compensate a plaintiff for the defendant's beneficial use of the damage funds between the time the injury occurred and the time the judgment was rendered, is available as a matter of course, absent exceptional circumstances. *See Concorde Limousines, Inc. v. Moloney Coachbuilders, Inc.*, 835 F.2d 541, 549 (5th Cir. 1987); *see also Bituminous Cas.*

No. 16-20293

*Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996); *Am. Int'l Trading Corp v. Petroleos Mexicanos*, 835 F.2d 536, 541 (5th Cir. 1987).

Although the precise contours of what constitutes an exceptional circumstance have not been wholly defined, our cases applying Texas law clarify the following rules: (1) exceptional circumstances exist for reducing an award of interest, "even to the point of elimination," only if "the trial court cannot address through other means any equitable concerns that favor the defendant"; and (2) "[i]f a trial court finds such exceptional circumstances, it should explain them." *Concorde Limousines*, 835 F.2d at 549 (citing *Cavnar*, 696 S.W.2d at 553–54; *Matthews v. DeSoto*, 721 S.W.2d 286, 287 (Tex. 1986) (per curiam)).

## 2. Analysis

ISMT contends that the equity principle underlying prejudgment interest does not apply to this case. It argues that an award of prejudgment interest is appropriate only when one party wrongfully detains and uses the money of someone else, and that here there has been no wrongful detention because Joy Pipe has allegedly never been out of pocket for any of its losses. This is because the money awarded as damages for mitigation efforts pursued through Welded Tube was a credit that Welded Tube otherwise owed on a floating account, not a lump sum of cash, and ISMT claims that there is no evidence that Texas Couplings has yet been paid for its investigatory work. According to ISMT, if there was no money wrongfully detained, then there was no deprivation of funds upon which Joy Pipe could have been earning interest—a situation that qualifies as an exceptional circumstance.

We conclude that remand is warranted on this issue. Texas law plainly requires an equitable award of prejudgment interest to a prevailing plaintiff as a matter of course. *See, e.g.*, *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1329 (5th Cir. 1994). Although the trial court may exercise discretion to forego

5

No. 16-20293

such an award in the presence of "exceptional circumstances," those circumstances must be explained. *Concorde Limousines*, 835 F.2d at 549. Failure to provide reasons detailing exceptional circumstances is grounds for remand. *See Am. Int'l Trading Corp.*, 835 F.2d at 541 ("Because the trial court . . . provided no explanation for its denial of prejudgment interest . . . we remand this case for the trial court's reconsideration of this issue. The trial court must determine whether exceptional circumstances warrant a denial of prejudgment interest in this case."); *Concorde Limousines*, 835 F.2d at 550 (remanding where the district court failed to explain exceptional circumstances justifying denial of prejudgment interest). Here, the district court failed to explain the exceptional circumstances justifying its denial of prejudgment interest. Thus, under this court's jurisprudence, the district court abused its discretion. *See Reyes-Mata*, 299 F.3d at 507. We therefore remand with instructions to explain the exceptional circumstances, if any, that justify denial of prejudgment interest. *See Am. Int'l Trading Corp.*, 835 F.2d at 541.

### B. Post-Judgment Interest

The propriety of a post-judgment interest award is a question of law that is reviewed de novo. *Celtic Marine Corp. v. James C. Justice Cos.,* 593 F. App'x 300, 305 (5th Cir. 2014) (per curiam); *see also DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 435 (5th Cir. 2003).

### 1. Legal Standard

28 U.S.C. § 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." "Federal law governs postjudgment interest in federal cases, including diversity cases." *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456 (5th Cir. 2013). Our case law is clear that, given the unequivocal language of § 1961(a), an award of post-judgment interest is not discretionary. *Id.* at 456–57; *Meaux Surface Prot., Inc. v. Fogleman,* 607 F.3d 161, 173 (5th Cir. 2010).

6

No. 16-20293

## 2. Analysis

The district court erred in failing to award post-judgment interest. Section 1961(a) and the case law interpreting it clarify that district courts are required to award post-judgment interest on monetary judgments as a matter of course—they do not have discretion to deny it. *Meaux*, 607 F.3d at 173. Joy Pipe recovered a money judgment in a district court, but the district court denied recovery of post-judgment interest. Moreover, ISMT does not oppose Joy Pipe's request for post-judgment interest at the federal rate. We therefore remand with instructions to calculate and include post-judgment interest in the damages award at the appropriate, statutorily-specified rate. *See Rollins, Inc.*, 353 F.3d at 435–36.

## C. Taxable Costs

This court reviews a district court's decision to deny an award of costs to the prevailing party under Federal Rule of Civil Procedure 54(d) for abuse of discretion. *See Moore v. CITGO Ref. & Chems. Co.*, 735 F.3d 309, 319 (5th Cir. 2013).

## 1. Legal Standard

Rule 54(d)(1) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). This court has acknowledged that Rule 54(d)(1) "creates 'a strong presumption' in favor of awarding costs to a prevailing party." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.,* 807 F.3d 125, 128 (5th Cir. 2015). This presumption provides that "a district court 'may neither deny nor reduce a prevailing party's request for cost[s] without first articulating some good reason for doing so.'" *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 384 (5th Cir. 2012) (quoting *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)); *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006).

No. 16-20293

### 2. Analysis

Joy Pipe was the prevailing party below, yet the district court neglected to award costs in its favor and did not explain its reasons for declining to do so. Accordingly, we remand the case to the district court with instructions to either modify the judgment to include a cost award or provide reasons for not doing so, based on the presumption in favor of awarding costs evident in Rule 54(d)(1) and in light of this court's precedent requiring either an award or an explanation. *See, e.g., Manderson*, 666 F.3d at 384.

### D. One-Satisfaction Rule

ISMT argues that the district court erred in permitting simultaneous recovery under two implied warranty theories—merchantability and fitness for a particular purpose—rather than requiring Joy Pipe to elect its remedy between these two theories. "Whether to impose the election of remedies requirement under Texas law is a question of law that is reviewed *de novo*." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 335 (5th Cir. 2008).

### 1. Legal Standard

The "one-satisfaction rule" stands for the proposition that "a plaintiff cannot obtain more than one recovery for the same injury." *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 80 (Tex. App.—El Paso 1998, pet. denied). Where a plaintiff advances alternate theories of liability, the one-satisfaction rule mandates only one recovery if: (1) there is only one injury; (2) the theories of liability are mutually exclusive; or (3) there are no separate damage findings based on the alternate theories of liability. *Id.* Damage awards premised on more than one theory do not amount to a double recovery "if the theories of liability arise from two separate and distinct injuries, and there has been a separate and distinct finding of damages on both theories of liability." *Id.* (citing *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987)). Where the one-satisfaction rule applies, a plaintiff "has a right to a judgment

on the theory entitling him to the greatest or most favorable relief." *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.,* 747 S.W.2d 785, 787 (Tex. 1988).

## 2. Analysis

According to ISMT, a judgment awarding damages on two alternate theories can occur only where those theories arise from separate and distinct injuries and separate and distinct damages findings are entered on each theory. ISMT contends: (1) that Joy Pipe suffered only a single injury—the economic loss caused by ISMT—that has been consistently argued in terms of alternate theories; and (2) that the jury did not make separate and distinct damages findings as to each theory because the elements of damages in the jury charge do not differ between the theories.

Joy Pipe argues that the jury did award separate and distinct elements of damage. This is because in response to the interrogatory regarding breach of the implied warranty of merchantability, the jury awarded precisely the mitigation costs associated with Texas Couplings, and in response to the interrogatory regarding the warranty of fitness for a particular purpose, the jury awarded the mitigation costs associated with Welded Tube.

We conclude that there is no double recovery in this case such as would offend the one-satisfaction rule. In reaching this conclusion, we acknowledge that the injury in this case consists entirely of the mitigation costs associated with delivery of the defective steel, that the evidence establishing the course of conduct leading to the damages Joy Pipe claims is the same for both implied warranty claims, and that the damages questions submitted to the jury were the same for each alternate claim. What informs our judgment here, however, is the recognition that the amounts awarded as to the two implied warranty claims were exactly equal to (1) the mitigation costs incurred by, and paid to Texas Couplings (equal to the award as to the implied warranty of merchantability claim); and (2) the mitigation costs incurred by, and paid to

No. 16-20293

Welded Tube (equal to the award as to the implied warranty of fitness for a particular purpose claim).

In other words, Joy Pipe is recovering for two separate and distinct amounts that it separately paid to different companies—Texas Couplings and Welded Tube—in connection with distinct occurrences creating different losses for different parties. Thus, Joy Pipe is not recovering for the same injury twice, and the district court did not err in permitting simultaneous recovery under both implied warranty theories. *Am. Rice*, 518 F.3d at 335.

## E. Jury Instructions

ISMT challenges the adequacy of the district court's jury instructions on various grounds. "This court reviews jury instructions for abuse of discretion." *Garriott v. NCsoft Corp.*, 661 F.3d 243, 247 (5th Cir. 2011).

### 1. Legal Standard

A party appealing a district court's refusal to give a particular instruction to the jury must first show that the proposed instruction properly stated the law. *See Julian v. City of Houston*, 314 F.3d 721, 727 (5th Cir. 2002). Provided the challenging party succeeds in making this showing, that party must then "demonstrate that the charge as a whole creates substantial and ineradicable doubt [as to] whether the jury has been properly guided in its deliberations." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting *Price v. Rosiek Constr. Co.*, 509 F.3d 704, 708 (5th Cir. 2007) (per curiam)). Moreover, even where the challenger proves the instruction misguided the jury, this court will reverse only if the erroneous instruction affected the outcome of the case. *Id.*

### 2. Analysis

ISMT emphasizes three allegedly deficient features of the district court's jury instructions: (1) the district court's failure to divide the jury charge by individual well failure, such that liability for each failure could be determined

separately; (2) the district court's failure to include a specific instruction requiring the jury to find that ISMT's actions actually caused the well failures; and (3) the district court's failure to include an instruction on the new and independent cause doctrine. Finally, ISMT argues that even if none of these alleged errors is individually sufficient to require a new trial, they cumulatively combine to constitute an abuse of discretion. We address each of these contentions in turn.

### a. Division of the Jury Charge By Individual Well Failure

ISMT argues that because this case involved two separate well failures that allegedly caused separate amounts of damages for each, the jury charge should have been structured to permit the jury to separately judge liability and damages by well failure. It argues that in situations involving multiple injuries, the use of special interrogatories that break out questions of liability and damages are preferred. It then argues that there is ample evidence relating to causation that would have permitted the jury to find ISMT liable for the Vermilion well failure and not liable for the NuVista well failure, and that omitting to divide the jury charges accordingly prejudiced the jury's damages determinations.

Fed R. Civ. P. 49 provides district courts with broad discretion to frame written questions to the jury. *Cent. Progressive Bank v. Fireman's Fund Ins.*, 658 F.2d 377, 381 (5th Cir. Unit A Oct. 1981) (citing *Dreiling v. Gen. Elec. Co.*, 511 F.2d 768, 774 (5th Cir. 1975)).

> "In determining the adequacy of the form of special interrogatories, we consider '(i) whether, when read as a whole and in conjunction with the general charge the interrogatories adequately presented the contested issues to the jury, . . . (ii) whether the submission of the issue to the jury was "fair", . . . and (iii) whether the "ultimate questions of fact" were clearly submitted to the jury.'"

*Id.* at 381 (alterations in original) (quoting *Dreiling*, 511 F.2d at 774); *see also Bosarge v. Cheramie Maine, L.L.C.*, 675 F. App'x 417, 421 (5th Cir. 2017) (per curiam).

Although in situations involving multiple "separate (and probatively uncertain) incidents," special interrogatories directed to each incident would have the practical benefit of facilitating appellate review and are accordingly encouraged by this court, there is no authority indicating that this practice is mandatory. *See McWilliams v. Texaco, Inc.*, 781 F.2d 514, 516–17 (5th Cir. 1986); *see also Baumstimler v. Rankin*, 677 F.2d 1061, 1071–72 & n.15 (5th Cir. 1982).

Here, we conclude that the district court did not abuse its discretion in determining not to categorize damages by well failure through use of special interrogatories. The interrogatories relating to damages for the implied warranty claims accurately and fairly state the elements of the damages sought—the costs of nonconforming coupling stock, the costs of mitigation efforts by Texas Couplings, and the costs of mitigation efforts by Welded Tube.[2] Regardless of which well failure apprised the relevant parties of the need to undertake the mitigation efforts for which Joy Pipe now seeks damages, the damages sought can all be traced back to delivery of the same nonconforming goods. When read as a whole, an inquiry into the relationship between breach of the warranties and the damages resulting therefrom is precisely what the interrogatories submitted to the jury conveyed. *See Cent. Progressive*, 658 F.2d at 381. While dividing the damages by well failure may have been one way of presenting the questions to the jury to maintain consistency with the damages

---

[2] The damages-related interrogatories—virtually identical between the warranty theories—ask "[w]hat sum of money, if any, if paid now in cash, would fairly and reasonably compensate Joy Pipe for its damages, if any, that resulted from a breach of the implied warranty of [merchantability/fitness for a particular purpose] by any of those named below?"

discussions in the testimony, we cannot say that the district court's decision to present the issues in another, equally accurate manner constitutes an abuse of discretion. Certainly it raises no issue of a substantial or ineradicable doubt as to the propriety of the jury's guidance. *Abraham*, 708 F.3d at 620.

### b. *Causation of the Individual Well Failures*

ISMT argues that the jury should have been specifically instructed that it was required to find that ISMT caused the two well failures, as opposed to finding that ISMT breached the implied warranties and that those breaches alone caused Joy Pipe's damages. In ISMT's view, this constituted error because the well failures were the occurrences that led to the alleged consequential damages, and accordingly there could be no damages without proof that ISMT's goods caused the well failures. ISMT claims that if the jury had been instructed in the preferred manner, it would not have found ISMT liable on grounds of an insufficiency of evidence relating to causation.

In Texas, to recover consequential damages for breach of implied warranty of merchantability or fitness for a particular purpose, a plaintiff must establish that the seller's actions constituting a breach proximately caused those damages. *See* TEX. BUS. & COM. CODE § 2.715(b)(2) (noting that consequential damages include any "injury to person or property proximately resulting from any breach of warranty"); *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 706 (Tex. 2008). Proximate cause in Texas has two elements—cause in fact (also known as substantial factor) and foreseeability. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) (citing *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)). Cause in fact is established when the problematic act "was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *Id.* at 799. Moreover, Texas law is clear that in the breach of implied warranty context:

> [T]he question of 'proximate' cause turns on whether it was reasonable for the buyer to use the goods without such inspection as would have revealed the defects. If it was not reasonable for him to do so, or if he did in fact discover the defect prior to his use, the injury would not proximately result from the breach of warranty.

TEX. BUS. & COM. CODE § 2.715 cmt. 5; *see also Signal Oil & Gas Co. v. Universal Oil Prods.*, 572 S.W.2d 320, 329 (Tex. 1978) (noting the relevance of a buyer's negligence to the proximate cause determination in an implied warranty context).

Here, we conclude that the district court did not abuse its discretion in framing the causation inquiry for the jury. The jury instructions contained detailed language concerning the nuances of proximate causation, incorporating all the elements as listed above. Specifically, the jury instruction stated:

> "Proximate cause" means a cause that was a substantial factor in bringing about losses, and without which cause such losses would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen those losses or some similar losses, might reasonably result therefrom.

Although we accept ISMT's contention that the jury's consideration of proximate cause must include causation for the well failures because they created repair costs that Joy Pipe sought to recover, that does not entitle ISMT to a jury instruction that explicitly mentions the well failures. The requirement is a showing of proximate causation between the breach and the losses (damages) resulting therefrom. *JCW Elecs., Inc.* 257 S.W.3d at 706. To accurately state the plaintiff's burden on causation, the jury instruction need only communicate this causal connection. Naturally, where the well failures form part of the damages, a general instruction regarding proximate causation imports the need for a finding regarding those failures, but a decision not to

14

specifically break out that finding cannot constitute an abuse of discretion. *Cf.* FED R. CIV. P. 49 (providing broad discretion to district courts in manner of charging the jury).

### c. *The New and Independent Cause Doctrine*

ISMT maintains that Welded Tube performed a negligent inspection of the supply yard containing the couplings manufactured from ISMT steel, resulting in a defective coupling making its way into the NuVista well. Accordingly, ISMT argues that it should have been permitted to include a jury instruction on the "defense" of new and independent cause and its relationship to proximate cause. ISMT acknowledges that there is no case establishing that the new and independent cause concept has relevance to a UCC breach of implied warranty claim, but argues that because a definition of proximate causation is required in a breach of warranty case, an instruction involving the related concept of a new and independent cause should also be given where there is evidence to support it.

The concept of a "new and independent cause" is directly related to the concept of proximate cause, and refers to "the act or omission of a separate and independent agency, which destroys the causal connection between the negligent act or omission of the defendant and the injury complained of, and thereby becomes . . . the immediate cause of such injury." *Biaggi v. Patrizio Rest. Inc.*, 149 S.W.3d 300, 305 n.6 (Tex. App.—Dallas 2004, no pet.) (alteration in original) (quoting *Young v. Massey*, 101 S.W.2d 809, 810 (Tex. 1937)). The concept is distinct from the question of the buyer's own negligence, already discussed above as germane to the proximate cause inquiry in a breach of warranty case.

We hold that the district court did not abuse its discretion in refusing to instruct the jury regarding the new and independent cause doctrine. ISMT concedes that there is no authority suggesting that the concept has application

in a breach of warranty context, and a review of the applicable law reveals no statute or case to contradict this proposition. Accordingly, we conclude that the district court did not abuse its discretion in omitting an instruction relevant to the new and independent cause doctrine. *Garriott*, 661 F.3d at 247.

### d. Cumulative Error

ISMT argues that, notwithstanding their individual significance, the various errors it alleges pervaded the jury instructions combine to cumulatively constitute an abuse of discretion mandating remand for a new trial.

The cumulative error doctrine applies where "an aggregation of non-reversible errors," discussed individually, can combine to require reversal. *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012) (en banc); *see also United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001). However, "'[c]umulative error' justifies reversal only when errors 'so fatally infect the trial that they violate[] the trial's fundamental fairness,'" *Delgado*, 672 F.3d at 344 (quoting *United States v. Fields*, 483 F.3d 313, 362 (5th Cir. 2007)), and for that reason "the possibility of cumulative error is often acknowledged but practically never found persuasive." *Derden v. McNeel*, 978 F.2d 1453, 1456 (5th Cir. 1992) (en banc).

Likewise, here we conclude that the cumulative error doctrine does not apply to this case. First, it is not clear that this Circuit's cumulative error doctrine applies outside of a criminal context. Second, assuming arguendo that the doctrine does have broader applicability, ISMT does not appear to have put forth any evidence that the "errors" of which it complains are so numerous and so egregious as to "fatally infect" the trial and undermine its "fundamental fairness" in violation of due process. *See Delgado*, 672 F.3d at 344. Thus, the errors that ISMT alleges do not cumulatively amount to an abuse of discretion.

No. 16-20293

## III. CONCLUSION

For the foregoing reasons, we AFFIRM as to the amounts awarded on each theory of liability and as to the propriety of the district court's jury instructions. We REMAND with instructions for the district court to: (1) calculate and award post-judgment interest at the statutorily-specified rate; (2) calculate and award prejudgment interest or explain the exceptional circumstances that warrant its denial; and (3) award taxable costs or explain its reasons for failing to do so.