# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30113

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2018

Lyle W. Cayce
Clerk

MALIK & SONS, L.L.C.,

Plaintiff – Appellee,

v.

CIRCLE K STORES, INCORPORATED,

Defendant – Appellant.

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CV-6938

Before WIENER, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Malik & Sons, L.L.C. sued Circle K Stores, Inc. for breach of contract, claiming that Circle K improperly terminated a lease agreement and failed to pay rent. A jury returned a verdict for Malik. On appeal, Circle K challenges the district court's denial of Circle K's motion for judgment as a matter of law, specific jury interrogatories, specific jury instructions, various evidentiary

---

* Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

No. 17-30113

rulings, and the supersedeas bond amount set by the district court.  We AFFIRM.

I.

Malik owns property in Covington, Louisiana.  Malik and Circle K began lease negotiations about this property, and, on July 29, 2014, Malik signed and sent a lease agreement to Circle K to sign.

The first page of the lease agreement reads: "This Ground Lease ("Lease"), dated for reference purposes as _____, 2014, is made and executed by and between Malik and Sons, LLC ("Landlord"), and CIRCLE K STORES INC., a Texas corporation ("Tenant")."  The parties agree that when Malik and Circle K signed the lease, there was no date in that blank.  On the last page of the lease, there is a paragraph that reads: "IN WITNESS WHEREOF, the parties hereto have duly executed this Lease as of the day and year first written above."  The tenant's obligations are "subject to Tenant's satisfaction or waiver of all the following conditions within Ninety Days (90 days) of the full execution of this Lease (the "Feasibility Period")."

On August 28, 2014, Circle K signed the lease agreement.  As required by the lease agreement, Circle K deposited it in escrow, and on the next day, an escrow agent wrote "October 7" in the blank on the first page of the lease agreement.  Later, Circle K terminated the lease agreement by sending a letter to Malik.  Circle K and Malik do not dispute that this termination was proper under the lease agreement's 90-day feasibility period.  Circle K sent Malik a letter on November 24, 2014 "rescinding the termination letter" and notifying Malik that "the effective dates and timing in the lease dated October 7, 2014 are still valid and the lease is still valid."  On December 27, 2014, Circle K sent a third letter to Malik to terminate the lease again, but Malik told Circle K that its termination was untimely because it was not within the 90-day feasibility period.

2

No. 17-30113

Malik filed a complaint seeking enforcement of the lease agreement's terms, damages, interest, and attorneys' fees.  Malik contended that the lease was fully executed on August 28 when Circle K signed it.  According to Malik, the 90-day feasibility period expired November 26.  Circle K and Malik both moved for summary judgment, but the district court denied their motions.  The parties filed a second round of opposed motions for summary judgment, which the district court denied, as well.  The district court determined that the lease agreement was ambiguous as a matter of law.  It held that the intent of the parties was a "genuine issue of material fact which must be decided on a full trial on the merits."  The case went to trial, and the jury returned a verdict for Malik.  On appeal, Circle K contends that the district court made multiple errors.  According to Circle K, the district court erred: (1) by denying Circle K's motion for judgment as a matter of law; (2) by using "confusing and misleading" jury interrogatories; (3) by failing to charge the jury properly; (4) by limiting the testimony of two witnesses; (5) by not allowing Circle K to present evidence that Malik did not mitigate its damages and not charging the jury on the duty to mitigate damages; and (6) by setting an excessive supersedeas bond.

II.

A.

We review *de novo* a district court's denial of a motion for judgment as a matter of law.  *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012).  Such a motion must be denied "unless the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'"  *Id.* (quoting *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)).  We are "especially deferential" to a jury verdict.  *Id.* at 498–99.

Circle K contends that the district court erred in denying its motion for judgment as a matter of law.  Circle K argues that its termination was timely

No. 17-30113

because its November 24 letter and the lease agreement formed a new contract, making the lease agreement's execution date October 7. Thus, insists Circle K, its termination on December 27 was within the 90-day feasibility period. According to Circle K, the district court should not have considered extrinsic evidence in interpreting the contract. Alternatively, Circle K contends that Malik, which sought to enforce the contract, failed to show that there was a "meeting of the minds" for a contract with an execution date of August 28.

Under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. A contract is ambiguous, as a matter of law, when its terms are "'susceptible to more than one interpretation,' when 'there is uncertainty as to its provisions,' or when 'the parties' intent cannot be ascertained from the language used.'" *Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666, 668 (5th Cir. 2012) (quoting *Sequoia Venture No. 2, Ltd. v. Cassidy*, 42,426 (La. App. 2 Cir. 10/10/2007); 968 So. 2d 806, 809). If a contract is ambiguous, "[e]xtrinsic evidence is admissible to interpret the intent behind an ambiguous provision." *Id.* at 668–69. The issue here is whether the contract "is susceptible to more than one reasonable interpretation rendering it ambiguous and uncertain as to the intention of the parties." *Dixie Campers, Inc. v. Vesely Co.*, 398 So. 2d 1087, 1089 (La. 1981).

The district court did not err in denying Circle K's motion for judgment as a matter of law. The contract is ambiguous as to the execution date, so it was proper for the district court to admit extrinsic evidence to determine the intent of the parties. The "four corners" of the contract—the lease agreement and November 24 letter—are susceptible to different interpretations as to the execution date. The last page of the lease agreement states that the parties have "duly executed this Lease as of the day and year first written above."

4

However, it is not clear what day and year is "written above." The first page, which gives the *only* date in the lease agreement, states that it is "dated for reference purposes." Circle K counters that because October 7 was the only date written on the lease agreement, it must be the execution date referenced on the last page of the lease. Malik argues that that date was not the execution date because the escrow agent wrote it in after both parties had signed the lease.

Circle K offers a plausible interpretation, but Malik offers an alternative, credible interpretation to Circle K's proposed interpretation. It seems equally—if not more likely—that the "day and year first written above" is referencing a date the parties should have written *on the last page.* Therefore, although the last page references an execution date "written above," there is no date on that page. The only other date in the document is labeled as "for reference purposes." Even though Circle K is correct that parties "are free to specify the date of a contract's execution," the issue here is whether they did.

The November 24 letter only contributes to the ambiguity. Even though it references October 7, it expressly provides that the "dates and timing in the lease are still valid." It does not identify an execution date but rather seems to be, in fact, using October 7 "for reference purposes," as instructed by the first page of the lease agreement. As such, the issue of identifying the execution date is not resolved.

At trial, different witnesses testified that "execution" meant signing by both parties. The escrow agent testified that she wrote "October 7" on the contract without direction from the parties. Reasonable jurors could believe that Circle K and Malik did not intend for the execution date to be selected by an escrow agent but rather to be when both parties had signed the agreement. The November 24 letter by its own language suggests a consistency of timeline: "the dates and timing in the lease are still valid." Given that reasonable jurors

could believe that the lease's execution date was August 24, the district court properly denied Circle K's motion for judgment as a matter of law.

As for Circle K's contention about the lack of a "meeting of the minds," even though Circle K witnesses testified that they thought the execution date was October 7, reasonable jurors could discredit their testimony. Reasonable jurors could believe that the November 24 letter, drafted by Circle K, was meant to reinstate the August 24 timeline and that Circle K was changing its story at trial. Accepting Malik's argument, reasonable jurors could believe that if Circle K intended to change the execution date, Circle K probably would not have said in its November 24 letter that "the dates and timing in the lease are still valid."

For these reasons, we conclude that the district court did not err when it denied Circle K's motion for judgment as a matter of law.

### B.

The next issue is whether the district court erred in its jury interrogatories. "Generally, a trial court is afforded great latitude in the framing and structure of the instructions and special interrogatories given to the jury, so much so since we are loath to disturb that discretion absent a showing of abuse of discretion." *Barton's Disposal Serv., Inc. v. Tiger Corp.*, 886 F.2d 1430, 1434 (5th Cir. 1989) (internal citations omitted).

On appeal, Circle K first contends that the district court misallocated the burden of proof in its jury interrogatories. Question 3 of the jury interrogatories asked whether Circle K proved "by a preponderance of the evidence that the parties agreed to modify the date on which the lease was fully executed to be October 7, 2014 by virtue of the November 24, 2014 letter." Circle K notes that Malik, as the plaintiff, had the burden to prove that the November 24 letter created an enforceable contract.

When we evaluate jury interrogatories, we consider:

(i) whether, when read as a whole and in conjunction with the general charge the interrogatories adequately presented the contested issues to the jury; (ii) whether the submission of the issues to the jury was "fair"; and (iii) whether the "ultimate questions of fact" were clearly submitted to the jury.

*Goodman v. Harris Cty.*, 571 F.3d 388, 401 (5th Cir. 2009) (quoting *Barton's Disposal Serv., Inc.*, 886 F.2d at 1435). The trial court must "adequately and clearly" present each contested issue to the jury, but "academic perfection is not demanded." *Barton's Disposal Serv., Inc.*, 886 F.2d at 1435.

It is true that Malik had the burden to prove the existence of an enforceable contract, but Question 3 did not upset this balance. Read in context with the preceding questions, Question 3 clearly offered a possible affirmative defense for Circle K.

Question 1 required the jury to determine whether Malik proved the existence of an enforceable contract, and Question 2 asked whether that contract was executed in August or October. At that point, if the jury found in favor of Circle K in either of those questions, the interrogatories would stop, and Malik would lose. Only after the jury found that Malik proved that there was an enforceable contract, executed in August, did the verdict form ask whether the parties, by the November 24 letter, agreed to modify the execution date. Given the context of the other jury interrogatories, Question 3 was not improper, and the district court did not commit reversible error.

Circle K's other complaints about the jury interrogatories are likewise without merit. "[A] trial court is afforded great latitude in the framing and structure of the instructions and special interrogatories given to the jury." *Id.* at 1434. Here, the district court did not commit reversible error in its jury interrogatories.

No. 17-30113

C.

Circle K also insists that the district court did not properly charge the jury on the applicable law. When reviewing a jury charge, we consider whether "the charge as a whole is a correct statement of the law and whether it clearly instructs the jury on the law applicable to the facts." *United States v. Ibarra-Zelaya*, 465 F.3d 596, 607 (5th Cir. 2006). We reverse only when "the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *NewCSI, Inc. v. Staffing 360 Solutions, Inc.*, 865 F.3d 251, 263 (5th Cir. 2017) (quoting *Reyes-Mata v. IBP, Inc.*, 299 F.3d 504, 506 (5th Cir. 2002)).

Circle K makes seven objections to the jury charge: (1) the omission of an instruction on counteroffers; (2) the instruction on interpreting standard form contracts; (3) the instruction on ambiguity and interpreting the lease; (4) the instruction on unilateral error; (5) the omission of an instruction on duty to disclose; (6) the instruction on the definition of execution; and (7) the omission of an instruction on waiver.

Federal Rule of Civil Procedure 51 requires parties to object to the jury charge before the jury retires, "stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51; *see also Jimenez v. Wood County*, 660 F.3d 841, 845 (5th Cir. 2011) (en banc) (holding that "a specific, formal, on-the-record objection is required" to challenge jury instructions). When objections to the jury charge are "brought forth with specificity for the first time on appeal," they fail on "compelling procedural grounds." *Patton v. S. Bell Tel. & Tel. Co.*, 387 F.2d 360, 361 (5th Cir. 1968). "The objection must have been made on the specific 'ground raised on appeal, rather than a general objection to the instructions as a whole or an objection on a different ground.'" *Jimenez*, 660 F.3d at 845 (quoting *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1158 (5th Cir. 2006)).

At trial, Circle K did not state the specific grounds for many of its objections and arguably did not comply with Rule 51. Instead, Circle K rattled them off by number—even after the district court advised that "it would be better" if Circle K made a specific objection. In any event, none of Circle K's challenges to the jury instructions succeed. A review of the jury charge as a whole demonstrates that the district court was well within its discretion when it gave this jury charge. We have no doubt—much less "a substantial and ineradicable doubt"—that the jury was properly instructed on the law. *See NewCSI, Inc.*, 865 F.3d at 263 (quoting *Reyes-Mata*, 299 F.3d at 506).

## D.

Circle K asserts that the district court made numerous erroneous evidentiary rulings. We review a district court's decision granting or denying a motion in limine for abuse of discretion and require a showing of prejudice. *Hesling v. CSX Transp. Inc.*, 396 F.3d 632, 643 (5th Cir. 2005).

Circle K argues that the district court abused its discretion because it unduly limited Scott Dusang's testimony. Granting Malik's motion in limine, the district court limited Dusang's testimony to "facts he personally experienced or observed." We conclude that the district court did not abuse its discretion. Federal Rule of Evidence 701 limits the testimony of a lay witness to his opinion "rationally based on the witness's perception." Fed. R. Evid. 701. Circle K could have retained expert witnesses to testify about the legal significance of the terms of the lease agreement, but it did not.

Similarly, Circle K challenges the evidentiary rulings concerning the testimony of Dr. Naveed Malik. The district court allowed Dr. Malik to testify on direct examination about his belief that August 28 was the execution date but prevented him from testifying "about the basis for such claims." A review of the record shows that these rulings were within the discretion of the district

No. 17-30113

court.  We likewise conclude that the district court did not abuse its discretion in limiting Dr. Malik's testimony.

## E.

Circle K argues that the district court erred because it did not allow Circle K to present evidence that Malik failed to mitigate damages and did not charge the jury on Malik's duty to mitigate damages.  According to Circle K, Malik was required to "make reasonable efforts to mitigate the damage caused by the obligor's failure to perform."  Even though mitigation evidence would be allowed ordinarily, the district court correctly determined that the terms of this contract did not require Malik to mitigate its damages by reletting the premises.  The district court did not commit reversible error by not allowing Circle K's evidence and not charging the jury on this issue.

## F.

Finally, Circle K asserts that the district court set an excessive supersedeas bond amount.  Circle K does not articulate how this amount constitutes reversible error and offers no case law, arguably forfeiting its claim of error here.  *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010).  In any event, Local Rule 62.2 of the Eastern District of Louisiana gives the district court the discretion to set a bond amount at more than 20% of the judgment.  On this record, the district court did not abuse its discretion in setting the supersedeas bond.

## III.

For these reasons, we AFFIRM.